UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL O'DANIEL, | ) | CIV. 11-5088-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | **GRANTING IN PART** |
| | ) | **AND DENYING AS MOOT IN PART** |
| HARTFORD LIFE INSURANCE | ) | **PLAINTIFF'S MOTION** |
| COMPANY and HARTFORD LIFE AND | ) | **TO COMPEL** |
| ACCIDENT INSURANCE COMPANY, | ) | [DOCKET NO. 32] |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This diversity action is before the court on plaintiff Daniel O'Daniel's amended complaint alleging breach of contract, deceit, and bad faith denial of accidental death and dismemberment insurance benefits on a policy insuring his late wife, Jane. <u>See</u> Docket No. 16. Pending is Mr. O'Daniel's motion to compel defendants to respond to certain discovery requests that Mr. O'Daniel served on defendants Hartford Life Insurance Company ("HLIC") and Hartford Life and Accident Insurance Company ("HLAIC") (collectively "defendants"). <u>See</u> Docket No. 32. Defendants resist this motion. The Chief District Judge, the Honorable Jeffrey L. Viken, referred this motion to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A).

## FACTS

The facts relevant to the pending motion are as follows.  In 1993, Mr. O'Daniel became an insured under an accidental death and dismemberment policy offered to him as a member of the Black Hills Federal Credit Union.  Mr. O'Daniel's wife, Jane, was also insured as an "eligible dependent" under the policy at a rate of 60% of the insurance value on Mr. O'Daniel.  Jane remained continuously insured under the policy until her death on September 3, 2010.  Jane's death was brought about by an overdose of the drug fentanyl in her body.

Jane used a fentanyl drug patch which she wore on her skin and plaintiff alleges that the patch malfunctioned.  Fentanyl is a narcotic analgesic which Jane used for her chronic pain condition.

The identity of the insurer which provided the insurance to Black Hills Federal Credit Union members changed over the years.  Originally, the insurance policy was issued by General Electric Capital Assurance Company, then AMEX Life Assurance Company assumed the role of insurer in 1996.  In 2001, Fortis Benefits Insurance Company became the insurer.  The Hartford purchased Fortis, which then became a subsidiary of The Hartford.[1]

_____

[1]The Hartford is the parent company of both named defendants in this case, each of which is a subsidiary of The Hartford.

2

Then, in 2005 prior to Jane O'Daniel's death, The Hartford directly assumed the role of insurer.[2]  After Jane's death, Mr. O'Daniel submitted a claim for benefits as a result of Jane's death to Affinion Group (formerly known as Progeny Marketing Innovations, hereinafter "Progeny/Affinion"), an outside administrator that handled administrative services with respect to the insurance policy.  Progeny/Affinion forwarded Mr. O'Daniel's claim to defendants.

Defendants denied Mr. O'Daniel's claim on the basis of an exclusion from coverage that they claimed applied that exempted coverage for death which occurs due to medical treatment of sickness or disease.  Mr. O'Daniel pursued an administrative appeal, but defendants affirmed their denial of coverage.

Mr. O'Daniel alleges that he received only one written insurance policy that was issued to him in 1996 when he originally purchased the insurance. When The Hartford replaced Fortis as the insurer under the policies issued to Black Hills Federal Credit Union members, Mr. O'Daniel alleges that he received no new insurance policy.  The policy exclusion relied upon by

---

[2]Plaintiff asserts that the changeover from Fortis to The Hartford took place in the fall of 2005, and has supplied documents congruent with that assertion.  See Docket No. 34-2, page 2 (discussing change over in September and October, 2005).  Defendants have asserted that The Hartford began providing insurance in 2006.  See Docket No. 37 at 3.  In any event, the changeover took place before Jane O'Daniel's death in 2010.

defendants in support of their denial of benefits to Mr. O'Daniel does not appear in the written 1996 policy that Mr. O'Daniel received.

After defendants affirmed their denial of benefits in Mr. O'Daniel's administrative appeal, Mr. O'Daniel filed this lawsuit.   On April 13, 2012, the parties filed a stipulation for a protective order concerning the discovery of certain documents in this case.  See Docket No. 22.  Under the terms of the stipulation, if a party believes that testimony or a document is confidential, the party may so designate the discovery.  Id.  Upon a document or testimony being designated "confidential," certain protections apply to the use, dissemination, and filing of the discovery, unless the other party chooses to object to the designation of the discovery as confidential (in which case the court determines whether the discovery is indeed confidential).  Id.  The district judge granted a protective order incorporating the stipulated terms of the parties' stipulation.  See Docket No. 24.

Mr. O'Daniel served Progeny/Affinion Group and Allied Solutions LLC with subpoenas duces tecum.  In response, he received documents indicating that these companies acted as agents for defendants in marketing and promoting defendants' accidental death and dismemberment insurance policies.  The cover letter from Allied Solutions which accompanied that company's response to Mr. O'Daniel's subpoena indicated that Allied Solutions was involved in the conversion of the Black Hills Federal Credit Union

4

insurance policies to The Hartford when that occurred in October, 2005.  <u>See</u> Docket No. 34-2.

Seeking to solidify his knowledge of the nature and extent of the agency relationship between defendants, Progeny/Affinion, and Allied, on July 25, 2012, Mr. O'Daniel served defendants with Plaintiff's Third Request for Admissions and Plaintiff's Fourth Request for the Production of Documents. <u>See</u> Docket Nos. 34-3 and 34-4.  Mr. O'Daniel seeks this information so that he may know whether certain statements and representations made by Progeny/Affinion and Allied may be attributed to defendants by virtue of an agency relationship.

Defendants asserted objections to these discovery requests.  After attempting unsuccessfully to work out their differences, Mr. O'Daniel filed the instant motion to compel on December 1, 2012.  In his motion, Mr. O'Daniel requests that the court enter an order requiring defendants to provide responses to the discovery requests at issue.

## DISCUSSION

### A.    Good Faith Certification

Mr. O'Daniel's counsel has certified that he contacted opposing counsel numerous times prior to filing the instant motion to compel and attempted in good faith to resolve the parties' discovery dispute.  <u>See</u> Docket No. 33. Opposing counsel has not disputed this.  Thus, the court finds that the good

faith requirements of D.S.D. Local Rule 37.1 and Federal Rule of Civil

Procedure 37 have been met.

**B.      Plaintiff's Motion to Compel as to the Requests for Admission is Moot**

The dispute between the parties regarding Plaintiff's Third Requests for

Admission centered on four requests to admit.

> 2.     Defendants agreed with Progeny Marketing Innovations [aka Affinion Group] that Progeny Marketing Innovations would market defendants' Accidental Death & Dismemberment Insurance.
>
> 3.     The agreement referenced in the preceding paragraph was effective in 2005.
>
> 6.     Defendants agreed with Progeny Marketing Innovations [aka Affinion Group] that Progeny Marketing Innovations would market defendants' Accidental Death & Dismemberment Insurance to credit unions such as Black Hills Federal Credit Union.
>
> 7.     The agreement referenced in the preceding paragraph was effective in 2005.

See Docket No. 34-3, pages 1and 2.

Initially, defendants objected and refused to provide any substantive

answers to any of the four above-stated requests for admissions.  Later,

defendants filed amended answers to these requests for production which

provided substantive answers as to defendant HLAIC only.  See Docket No. 34-

1.  Defendants still refused to provide answers to the requests to admit as to

defendant HLIC, contending that defendant HLIC is not a proper party to this

litigation.  Id. at page 1.

Finally, ten days after Mr. O'Daniel filed the pending motion to compel, defendants filed their second amended responses to Plaintiff's Third Requests for Admission.  See Docket No. 38-3.  Those amended responses gave substantive responses–admissions–to each request to admit as to both named defendants.  Id.  These second amended responses to Plaintiff's Third Requests to Admit are acceptable to Mr. O'Daniel.  See Docket No. 40, pages 1 and 2. Therefore, there is no present controversy as to the requests to admit.  Id.

The court therefor denies this part of Mr. O'Daniel's motion as moot.  To the extent that defendants have interposed boilerplate objections to Mr. O'Daniel's requests to admit before providing the substance of defendants' responses to the requests to admit, the court overrules those boilerplate objections.[3]  "[B]oilerplate objections are unacceptable."  Kooima v. Zacklift Intern. Inc., 209 F.R.D. 444, 446 (D.S.D. 2002).  "The party resisting discovery must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive."  Id. (citing St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508 (N.D. Iowa 2000)).

---

[3]As to Plaintiff's Request to Admit Nos. 2, 3, 6, and 7, defendants first state the following objection: "With respect to Request for Admission No. ___, Defendants object on the ground that the request seeks discovery of irrelevant information not reasonably calculated to lead to discovery of admissible evidence."  See Docket No. 38-3.

7

**C.     Plaintiff's Fourth Request for the Production of Documents**

Plaintiff's Fourth Request for the Production of Documents is the only

remaining issue before the court.  That discovery request consists of a single

request for documents from defendants as follows:

> 1.     Produce all agreements between defendants and Affinion
> Group, Progeny Marketing Innovations, and/or Allied Solutions
> that were in effect in 2005 that relate to, address, or involve
> Affinion Group, Progeny Marketing Innovations, and/or Allied
> Solutions marketing defendants' Accidental Death &
> Dismemberment insurance.

See Docket No. 34-4.

Defendants' response to this request for documents was as follows:

> Defendants object to this request on the ground that it seeks
> discovery of irrelevant information not reasonably calculated to
> lead to discovery of admissible evidence.  Hartford further objects
> to this request because the burden or expense of the proposed
> discovery outweighs its likely benefits, considering the needs of the
> case, the amount in controversy, and the importance of the
> discovery in resolving the issues at stake in this action.  Hartford
> further objects to this request on the grounds that it seeks
> discovery of trade-secret and proprietary, confidential business
> information.

See Docket No. 34-6, page 2.[4]  Thus, defendants interposed three objections to

Plaintiff's Fourth Request for Production: (1) relevance, (2) undue burden, and

(3) confidentiality.  To date, defendants have produced no documents at all in

---

[4]Defendants do not, in responding to this discovery request, define
"Hartford."  It is presumed that when referring to "Hartford," defendants
intended to be referring to both defendants collectively.

response to the above discovery request.  The court addresses each of defendants' objections in turn.

### 1. Confidentiality

Defendants suggest that the documents Mr. O'Daniel is requesting may contain trade-secret, proprietary information, and confidential business information.  This objection is easily dealt with.

Under Federal Rule of Civil Procedure 26(c), a party may move for a protective order in order to protect trade secrets or otherwise confidential information.  The court, under that provision, may order that confidential commercial information not be revealed, or that it be revealed only in a specified way.  See FED. R. CIV. P. 26(c)(1)(G).

Here, anticipating such issues and desiring to provide for smooth-sailing in discovery, the parties have already put in place a stipulation, and the district court has already incorporated that stipulation into the terms of a protective order, just exactly the types of protections that would be called for when sensitive commercial information is part of discovery.  See Docket Nos. 22, 24. Defendants never mention this protective order.  Because they do not mention its existence, they never explain why its protections are inadequate for the documents plaintiff is requesting.

The court notes that, under the terms of the protective order already in place, any document designated as "confidential" may not be disclosed to

9

anyone except as provided in the stipulation.  See Docket No. 22, ¶ 2.  Such documents are permitted to be used only for the purposes of this lawsuit and not for any other purpose.  Id. at ¶ 3.  Confidential documents may be provided to the court, its personnel, the jury, or any person who is court-appointed or serves in a quasi-judicial function in connection with this litigation.  Id. at ¶ 4.  Confidential documents can also be disclosed to any party of record, outside counsel representing a party, independent experts, and consultants retained by a party, deponents in this action, and witnesses testifying in open court.  Id.  Any independent expert, consultant, or deponent who is allowed to see confidential documents must agree to be bound by the terms of the parties' protective stipulation and execute a declaration to that effect.  Id.  Confidential documents which are filed with the court must be filed under seal.  Id. at ¶ 5.  After termination of the litigation, all confidential documents must be returned to the party that provided them or destroyed.  Id. at ¶ 7.  If a person in possession of a confidential document receives a subpoena or court order requiring that person to produce the document, that person must immediately notify the party which produced the document so as to allow that party to object to the subpoena or order.  Id. at ¶ 8.

Given the comprehensiveness of the parties' protective stipulation, the court fails to see how the provisions of that agreement would not sufficiently protect any of the documents plaintiff seeks in its discovery request.  The court

notes additionally that defendants are asserting confidentiality only; they have not alleged that the documents are protected by attorney-client privilege or by the attorney work product doctrine.

The court overrules defendants' objection based on confidentiality of the documents.  If defendants believe that some or all of the documents called for by plaintiff's document request are confidential, defendants can so designate those documents pursuant to the stipulation defendants entered into.

## 2.    Relevance

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B)    *Specific Limitations on Electronically Stored Information.*  A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the

11

party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.

(C)    *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

       (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

      (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

     (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

See FED. R. CIV. P. 26(b)(2)(B) and (C).  If a party fails to respond to a proper

request for discovery, or if an evasive or incomplete response is made, the party

requesting the discovery is entitled to move for a motion compelling disclosure

after having made a good faith effort to resolve the dispute by conferring first

with the other party.  See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  <u>See</u> 8 Charles A. Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 2007, 36-37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 507-08 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be

13

defined with precision.  A variety of types of information not
directly pertinent to the incident in suit could be relevant to the
claims or defenses raised in a given action.  For example, other
incidents of the same type, or involving the same product, could be
properly discoverable under the revised standard. . . .  In each
instance, the determination whether such information is
discoverable because it is relevant to the claims or defenses
depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to
confine discovery to the claims and defenses asserted in the
pleadings, and signals to the parties that they have no entitlement
to discovery to develop new claims or defenses that are not already
identified in the pleadings. ... When judicial intervention is
invoked, the actual scope of discovery should be determined
according to the reasonable needs of the action.  The court may
permit broader discovery in a particular case depending on the
circumstances of the case, the nature of the claims and defenses,
and the scope of the discovery requested.

See FED. R. CIV. P. 26(b)(1) advisory committee's note.  The advisory committee

also cautions courts to keep in mind that decisions as to relevance at the

discovery stage are being made "well in advance of trial."  Id. (1970

amendment).  Therefore, a "flexible treatment of relevance [at the discovery

stage] is required. . ."  Id.

"Relevancy . . . encompass[es] 'any matter that could bear on, or that

reasonably could lead to other matter that could bear on, any issue that is or

may be in the case.' "  E.E.O.C. v. Woodmen of the World Life Ins. Society, No.

8-03-CV-165, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party

seeking discovery must make a "threshold showing of relevance before

14

production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See FED. R. CIV. P. 26(b)(1) advisory committee's note (2000 amendment).  Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit . . ." See FED. R. CIV. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule

15

requires the entity answering or producing the documents to bear that burden.").

Mr. O'Daniel has set forth his theory of relevancy.  He has obtained a number of documents directly from Progeny/Affinion Group and Allied Solutions that were associated with the life insurance policies issued by defendants to members of Black Hills Federal Credit Union.  He seeks the contracts in question between defendants and Progeny/Affinion and Allied so that he can further understand the agency relationship between defendants and Progeny/Affinion and Allied.  Specifically, Mr. O'Daniel wants to understand the exact contours of this agency relationship for purposes of attributing statements made by Progeny/Affinion and Allied to defendants.

Under Federal Rule of Evidence 801(d)(2)(C) and (D), certain statements by others may be attributed to a party as an admission:

> **(d)** **Statements That Are Not Hearsay.**  A statement that meets the following conditions is not hearsay:
>
> * * * *
>
> **(2)** **An Opposing Party's Statement**.  The statement is offered against an opposing party and:
>
> * * * *
>
> (C) was made by a person whom the party authorized to make a statement on the subject; [or]
>
> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed;

16

See FED. R. EVID. 801(d)(2)(C) and (D).

Defendants have answered plaintiff's third requests for admissions by admitting that Progeny/Affinion) had a marketing agreement with defendants that was in effect in 2005, whereby Progeny/Affinion would market defendants' accidental death and dismemberment policies to credit unions such as Black Hills Federal Credit Union.  See Docket No. 38-3 (Requests to Admit Nos. 2, 3, 6, & 7).  However, before a statement by Progeny/Affinion could be attributed to defendants under Federal Rule of Evidence 801(d)(2), Mr. O'Daniel will have to show not just that Progeny/Affinion was marketing on defendants' behalf generally–rather, he will have to show that Progeny/Affinion was authorized to make the specific statements it made or that the scope of the agency agreement was sufficient to encompass the statements Progeny/Affinion made.  The documents requested in Plaintiff's Fourth Request for the Production of Documents are certainly relevant to this issue.

Defendants argue that there are myriad separate agreements (more about this below) between themselves and Progeny/Affinion and that plaintiff must demonstrate the relevance of all of these agreements under the "threshold" relevancy requirement before discovery is allowed.  Defendants misconstrue plaintiff's burden under Rule 26 as well as misconstruing the document request at issue.  Plaintiff is requesting only a very narrow category of agreement between defendant and Progeny/Affinion: only marketing

agreements are requested, and only those marketing agreements concerning defendants' accidental death and dismemberment insurance.  Plaintiff has met the threshold showing of relevance as to this narrow category of agreements requested by him.

Defendants have denied having any agreement with Allied Solutions to market its life insurance products.  See Docket No. 38-3 (Requests to Admit Nos. 4, 5, 8, 9, 10 & 11).  Therefore, plaintiff has grounds for wanting to examine any contracts that might exist between defendants and Allied Solutions.  This is especially true in light of the discovery received directly from Allied Solutions that appears to confirm the existence of a marketing agreement between Allied Solutions and defendants.

Defendants admit some degree of relevance for the discovery requested when they claim that *most* of the agreements between themselves and Progeny/Affinion are irrelevant.  By inference, then, there must be some part of those agreements that *are* relevant.  Which brings the court to defendants' real argument:  that production of the agreements called for by plaintiff's request will be unduly burdensome.

### 3.    **Unduly Burdensome**

Once the threshold relevance of requested discovery is established, the burden shifts to the party resisting discovery to demonstrate some valid reason not to provide the discovery.  Penford Corp. v. Nat'l Union Fire Ins. Co., 265

F.R.D. 430, 433 (N.D. Iowa 2009); <u>St. Paul Reinsurance Co.,</u> 198 F.R.D. at 511. (Changed to short cite.) The court may limit discovery of even relevant information if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii).  It is upon this provision that defendants rely in seeking to avoid the discovery called for by Plaintiff's Fourth Request for the Production of Documents.

"All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." <u>Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton</u>, 136 F.R.D. 682, 684-85 (D. Kan. 1991).  The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had.  <u>Cincinnati Ins. Co. v. Fine Home Managers, Inc.</u>, No. 4-09-CV-234, 2010 WL 2990118, *1 (E.D. Mo. July 27, 2010); <u>Burns v. Imagine Films Entertainment, Inc.</u>, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

19

Here, on its face, plaintiff's document request is not unduly burdensome. It is limited to agreements that were in effect in the single year 2005.  See Docket Nos. 34-4 and 34-6.  The request is further limited to agreements that are related to the sole activity of "marketing" and limited to the sole category of defendants' "Accidental Death & Dismemberment" insurance.  Id.  The request is further limited to agreements between defendants and Progeny/Affinion and Allied Solutions and does not include agreements with other marketing agents. Id.

In his reply on the pending motion to compel, Mr. O'Daniel made a further offer to ease defendants' burden in complying with this document request.  See Docket No. 40 at pages 15 and 16.  Mr. O'Daniel represents that if defendants would produce an index of the documents covered by his document request, a process the parties have used previously in this litigation to narrow production of documents, Mr. O'Daniel will review the index and specify which documents, if any, he does not need.

"The party opposing discovery has the burden to show that its objections are valid by providing explanation or factual support."   Hohn v. BSNF Ry. Co., No. 8-05-CV-552, 2007 WL 2572440 at *3 (D. Neb. Sept. 4, 2007); see also Rubin v. Islamic Republic of Iran, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004) ("[T]he burden is upon the objecting party to show why a discovery request is improper.").  In asserting its "overly burdensome" argument, defendants

provide the court with little factual support for their position.  Nothing is demonstrated as to the number of documents responsive to the request, the form in which they are stored, the ease or difficulty of accessing them, or the estimated man hours that will be required to retrieve and produce the documents.  Defendants merely state generally that their relationship with Progeny/Affinion is "complex" and encompassed in "separate agreements that address a myriad of issues concerning the relationship of the parties, including compensation, reinsurance, privacy policies, dispute resolution, confidentiality, the identification of various duties, and everything in between."  See Docket No. 37 at page 3.

The court notes that plaintiff is not seeking agreements concerning any aspect of defendants' relationship with Progeny/Affinion except "marketing" of defendants' "accidental death and dismemberment" insurance policies.  By the very terms of the request, plaintiff is not seeking agreements on many of the various aspects listed by defendants.  Furthermore, as discussed above, plaintiff's offer to review an index of the agreements first further ensures that agreements that are not relevant need not be produced.  Defendants simply never recite specific facts from which the court could conclude that the task of amassing responsive documents–i.e. agreements dealing with marketing of accidental death and dismemberment policies–would require an unusual amount of labor relative to the value of the documents to issues in this case.

21

The court notes that it appears insureds such as Mr. O'Daniel and the credit unions offering the defendants' insurance had little, if any, direct contact with Hartford.  Instead, it appears such persons more likely interfaced with Progeny/Affinion and Allied Solutions as the "public face" of Hartford with regard to the type of policy owned by Mr. O'Daniel.  Therefore, the authority–or lack of authority–granted by defendants to Progeny/Affinion and Allied takes on greater importance concerning the issue of what was said on behalf of defendants and whether those statements were within the scope of authority defendants granted to their agents.

The court concludes that the burden on defendants of responding to plaintiff's document requests is sufficiently ameliorated by both the narrow nature of the request itself and plaintiff's offer to do a "first cut" on the basis of reviewing an index.  Therefore, the court will order defendants to respond to Plaintiff's Fourth Production of Documents by first producing an index of all responsive documents to Mr. O'Daniel.  After plaintiff's counsel reviews the index, defendants shall produce whatever documents are indicated by plaintiff's counsel.

### 4.    The Olio

The above discussion covers all the objections lodged by defendants in their formal response to Plaintiff's Fourth Request for Documents.  However, in

their brief in opposition to Mr. O'Daniel's motion to compel, defendants assert many other disparate arguments against the discovery.

Defendants argue that no documents regarding defendant HLIC should have to be produced because defendant HLIC is not a properly-named party to this lawsuit. Defendants assert that HLIC was not involved in the life insurance policies issued to members of Black Hills Federal Credit Union and does not bear any responsibility for any bad faith, breach of contract, or deceit in connection with Mr. O'Daniel's complaint.

This assertion is unavailing. First of all, if every defendant who asserted that it was not legally liable had the right to refuse to engage in discovery, no discovery would ever take place in any case. That is simply not the applicable rule. Discovery exists in part so that the parties can determine the basis of the parties' liability.

In addition, there exist some documents which were prepared in connection with Hartford's offering of life insurance policies to the members of Black Hills Federal Credit Union that appear to represent that "The Hartford" was replacing Fortis as the insurer, and that both defendants were subsidiaries of "The Hartford." See Docket No. 39-1 (stating that documents produced by defendants indicating that correspondence from Dawn Libin with Mr. O'Daniel directed him to contact defendant HLIC; that Mr. O'Daniel was asked to execute a medical release in favor of defendant HLIC, and that Dawn Libin was

a "Claim Analyst for [defendant HLIC]"); Docket No. 34-3, pages 8-9 (FAQ sheet regarding the conversion from Fortis to The Hartford, referencing defendant HLIC as a subsidiary of The Hartford).  A reasonable person could infer that HLIC, as a subsidiary of The Hartford, was an insurer under the policies offered to Black Hills Federal Credit Union members.  Such a representation by an agent may be binding on the principal.

Furthermore, defendants' assertion that HLIC is not liable is a substantive attack on HLIC's liability.  The proper way to raise such an argument is via a dispositive motion under Federal Rules of Civil Procedure 12(b)(6) or 56, not through discovery objections.

Defendants also assert that there are no agreements between them and Allied Solutions.  That may be true.  If so, defendants are correct that the court cannot order them to produce documents that don't exist.  However, to date, the only response defendants have interposed to plaintiff's document request consist of objections to that request.  See Docket No. 34-6, page 2.  At a minimum, then, if no responsive documents exist regarding Allied Solutions, defendants must respond substantively to the request by stating, under penalty of perjury or Rule 11 sanctions, that no agreements exist between themselves and Allied Solutions.

Defendants argue that they should not have to provide any documents pursuant to plaintiff's document request because they offered to stipulate that

24

HLAIC had a marketing relationship with Progeny/Affinion.  Defendants'
proposed stipulation was as follows:

> Affinion Benefits Group, LLC ("Affinion"), successor-in-interest to
> Progeny Marketing Innovations ("Progeny"), was acting as an agent
> of Hartford Life and Accident Insurance Company when it
> communicated with Black Hills Federal Credit Union ("BHFCU"),
> with BHFCU members, and with BHFCU members who became
> insured persons under the group accidental-death-and-
> dismemberment insurance policy issued by Hartford Life and
> Accident Insurance Company, policy ADD-12903 ("Hartford"); and
> when it handled administrative services including enrollment,
> collection and processing of premium payments, and ongoing
> communications with insured persons, claimants, and
> beneficiaries under the aforementioned accidental-death-and-
> dismemberment policy.

See Docket No. 38-2, page 3.

Mr. O'Daniel did not want to accept the above stipulation in lieu of
receiving actual copies of the agreements themselves for several reasons.  First,
the stipulation does not include defendant HLIC, which is a party to this
litigation until and unless it is dismissed from the litigation.  Second,
Mr. O'Daniel fears that the stipulation would be unintelligible to a jury.
Defendants bear the burden of showing that some valid reason exists for them
not to have to turn over what the court has concluded is relevant discovery.
They have not cited to any legal authority that a party may preclude otherwise
valid discovery by offering a (partial) stipulation.

To like effect is defendants' argument that plaintiff should be required to
obtain the requested documents from Progeny/Affinion and Allied directly and

that plaintiff can take depositions of Progeny/Affinion and Allied rather than obtaining the information from defendants.  Again, defendants cite to no authority that plaintiff should be required to seek documents from a non-party when such documents are available from a party (and are relevant).  Furthermore, Mr. O'Daniel points to Federal Rule of Civil Procedure 1 in support of his position that he should be allowed to use discovery rules that allow a more speedy and inexpensive means of obtaining information (i.e. a document request from defendants) as opposed to having to pay a process server to serve a subpoena *duces tecum* on an out-of-state nonparty, or to travel to another state personally, pay a court-reporter and witness fees to take depositions of a non-party.  The court agrees.

Finally, defendants urge this court to review *in camera* any documents that are ordered to be produced before disclosing them to plaintiff.  But defendants cite no authority or legal reason for this additional step.  The court is not as familiar as the parties are with the facts and legal issues of this case to be able to discern whether a particular provision in a particular contract will be needed at trial or may lead to other evidence.  Furthermore, as discussed above, a protection order is already in place.  *In camera* review is usually used when sensitive or confidential information is at issue and the court must determine whether it should be produced and, if so, what protections need be erected prior to production.  That has already been done by the parties in this

26

case via the protective order they stipulated to.  The court sees no need for *in camera* review and defendants have not adequately supported their request for such review.  Accordingly, it will not be ordered.

## CONCLUSION

Based on the foregoing, the court hereby

ORDERS that plaintiff's motion to compel [Docket No. 32] is granted in part and denied as moot in part as follows:

1.  Plaintiff's motion to compel defendants to provide answers to Plaintiff's Third Request for Admissions is denied as moot in view of the fact that defendants belatedly supplied appropriate responses; defendants' boilerplate objections to those requests are overruled.

2.  Plaintiff's motion to compel defendants to provide a substantive response and documents in response to Plaintiff's Fourth Request for the Production of Documents is granted.  Defendants shall first prepare and disclose to plaintiff within 15 days of the date of this order an index of the agreements responsive to plaintiff's document request.  Thereafter, plaintiff shall review the index and indicate to defendants within 15 days the agreements he wishes to obtain discovery of.  Defendants shall produce those documents to

plaintiff within 15 days of receiving plaintiff's indication as to the documents he needs.

3.   Plaintiff has not requested an award of attorneys fees or any other sanction in connection with his motion.  For that reason, none are granted.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated January 15, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE