UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL O'DANIEL, | ) | CIV. 11-5088-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| HARTFORD LIFE INSURANCE | ) | |
| COMPANY and HARTFORD LIFE | ) | |
| AND ACCIDENT INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the court is plaintiff's motion for partial summary

judgment and defendants' cross-motion for summary judgment.  (Dockets 49,

54).  The court referred the motions to Magistrate Judge Veronica L. Duffy for

resolution.  (Docket 101).  On September 20, 2013, Magistrate Judge Duffy

filed a report recommending the court grant in part and deny in part plaintiff's

motion for partial summary judgment and grant in part and deny in part

defendants' motion for summary judgment.[1]  (Docket 103).  Plaintiff and

defendants timely filed objections.  (Dockets 109, 110).  Both parties filed

responses to the objections.[2]  (Dockets 113, 114).

---

[1]When referring to the report and recommendation (Docket 103), the
court cites the electronic-filing page number.

[2]Fed. R. Civ. P. 72(b)(2) allows a party to respond to an opposing party's
objections.

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

For the reasons stated below, plaintiff's objections are overruled in part and sustained in part, and defendants' objections are overruled.  The court adopts in part and rejects in part the report and recommendation of the magistrate judge.

**A.  MAGISTRATE JUDGE'S FINDINGS OF FACT**

Neither party objected to the magistrate judge's findings of fact.  See Dockets 109, 110.  The magistrate judge's findings of fact are adopted by the court in accordance with 28 U.S.C. § 636(b)(1)(C).

**B.  MAGISTRATE JUDGE'S CONCLUSIONS OF LAW**

Plaintiff's objections to the magistrate judge's conclusions of law are:

1.  The magistrate judge erroneously refused to follow, and misinterpreted, Wolfe v. Order of United Commercial Travelers of America, 18 N.W.2d 755 (S.D. 1945).

2.  The magistrate judge's recommendation that Count Four - Bad Faith - should be dismissed is erroneous.

3.  The magistrate judge erroneously ruled that Hartford's "loss resulting from medical treatment" exclusion applies here.

4.  The magistrate judge erroneously ruled that pre-judgment interest is a jury question.

(Docket 109 at pp. 23-65)

2

Defendants' objections to the magistrate judge's conclusions of law are:

1.    The magistrate judge erred in entering summary judgment in favor of plaintiff on the breach-of-contract claim.

2.    The magistrate judge erred in concluding an issue of material fact exists regarding whether it was bad faith for defendants to deny plaintiff's claim under the Hartford policy.

3.    The magistrate judge erred in concluding an issue of material fact exists regarding whether defendants engaged in deceit in the handling of plaintiff's claim.

(Docket 110 at pp. 7-33).  Each objection will be addressed separately.

## C.    PLAINTIFF'S OBJECTIONS

### 1.    The magistrate judge erroneously refused to follow, and misinterpreted, <u>Wolfe v. Order of United Commercial Travelers of America</u>, 18 N.W.2d 755 (S.D. 1945).

Plaintiff argues the magistrate judge misinterpreted <u>Wolfe</u>, which resulted in an erroneous finding that <u>Wolfe</u> does not apply in this case. (Docket 109 at pp. 23-38).  Judge Duffy found the <u>Wolfe</u> decision not controlling for two reasons.  First, <u>Wolfe</u> involved a policy issued to an insured from a fraternal benefit association in Ohio and the court exclusively applied Ohio contract law in interpreting the policy.  (Docket 103 at p. 62).  Second, Judge Duffy concluded "the <u>Wolfe</u> decision is not controlling precedent . . . because the insurance provision being interpreted by the <u>Wolfe</u> court was

demonstrably different than the two key provisions in The Hartford's policy" at issue in this case.[3]  Id. at p. 63.

Plaintiff argues the South Dakota Supreme Court applied both South Dakota and Ohio law in deciding Wolfe.  (Docket 109 at p. 26).  Although that court acknowledged South Dakota law did not conflict with Ohio law on the subject, the court nevertheless concluded "the laws of Ohio will be observed, to the extent that they are found to be determinative of [the issues in the case]." Wolfe, 18 N.W.2d 755, 758 (S.D. 1945).  This statement by the court makes it clear which law was applied.  This court will not speculate whether the result would have been the same had the court exclusively applied South Dakota law. The court finds the magistrate judge did not err in concluding Wolfe is not controlling law in South Dakota.  The court also finds it significant that no subsequent South Dakota cases cite Wolfe as controlling precedent.  The court finds Wolfe does not control the outcome in this case.  Plaintiff's objection to the report and recommendation is overruled.

---

[3]Judge Duffy also found Wolfe unpersuasive based on the procedural history of the case, which included re-litigation of the case in South Dakota state courts after the United States Court of Appeals for the Eighth Circuit already issued a decision on the same issues.  (Docket 103 at pp. 64-65).  As noted by Judge Duffy, the Eighth Circuit in Order of United Commercial Travelers of Amer. v. Shane, 64 F.2d 55 (8th Cir. 1933) and the South Dakota Supreme Court in Wolfe decided the same issue and reached opposite conclusions.

**2.     The magistrate judge's recommendation that Count Four - Bad Faith - should be dismissed is erroneous.**

Count four of plaintiff's complaint alleges Hartford committed bad faith by ignoring Wolfe.  Because Wolfe is not controlling law in this case, the plaintiff's objection is overruled.  The court finds Judge Duffy's legal analysis on this point is well reasoned.  Defendants' motion for summary judgment on count four is granted.

**3.     The magistrate judge erroneously ruled that Hartford's "loss resulting from medical treatment" exclusion applies here.**

Judge Duffy found:

> The conclusion that Jane died as a result of fentanyl toxicity call[ed] into question two separate provisions of The Hartford's policy to determine whether her death [was] covered under the policy.  The first provision is the definition of "injury" which excludes coverage for losses resulting from medical treatment.  The second provision is the exclusion for losses due to the taking of prescription drugs.

(Docket 103 at pp. 66-67).  Judge Duffy found " '[m]edical and surgical treatment mean what is done by a physician . . . in diagnosing a bodily ailment and seeking to alleviate or cure it.  It includes the things done by the patient to carry out specific directions given for these ends by a physician.' "  Id. at p. 67 (quoting Grobe v. Vantage Credit Union, 679 F. Supp. 2d 1020, 1031-32 (E. D. Mo. 2010) (quoting Barkerding v. Aetna Life Ins. Co., 82 F.2d 358, 359 (5th Cir. 1936))).  Judge Duffy concluded that Jane's use of the fentanyl patch "constituted 'medical treatment' " and therefore fell within the medical

5

treatment exclusion.  Id. at p. 67 (citations omitted).  After finding Jane's death fell within the medical treatment exclusion, Judge Duffy engaged in a lengthy analysis related to the second provision of the Hartford policy which is referred to as the prescription drug exclusion.  Id. at pp. 68-80.  The prescription drug exclusion reads as follows:

> The Policy does not cover any Loss resulting from: . . . Injury sustained while voluntarily taking drugs which federal law prohibits dispensing without a prescription, . . . *unless the drug is taken as prescribed or administered by a licensed physician.*

(Docket 57-5 at p. 174 (emphasis added)).  This provision contains two parts. The first part excludes coverage for a loss resulting from voluntarily and improperly taking drugs which require a prescription under federal law.  The second part contains an exception to the exclusion by stating losses are covered if the loss results from taking a prescription drug when the drug is taken as prescribed or administered by a physician.

Judge Duffy's analysis concluded although coverage for Jane's death was excluded under the medical treatment exclusion, the policy's prescription drug exception created coverage.  As a result, Judge Duffy found Jane's death was a covered loss under the Hartford policy.  (Docket 103 at pp. 79-80).

Despite Judge Duffy's conclusion that Jane's death was a covered loss under the policy, plaintiff contends Judge Duffy erred in finding Hartford's "loss resulting from medical treatment exclusion" applied in this case.  (Docket

6

109 at pp. 40-59).  Plaintiff agrees with Judge Duffy's ultimate conclusion, but "disagrees with her view that the exclusion for 'Loss resulting from: . . . medical or surgical treatment of a sickness or disease,' would bar coverage if it stood alone."  Id. at p. 41.  Plaintiff contends Judge Duffy's analysis related to the "loss resulting from medical treatment exclusion" fails to consider the "resulting from" language.  Id. at pp. 42-44.  Judge Duffy found it unnecessary to address this issue "because the law is clear that the taking of prescription medicine for chronic pain is 'medical treatment of a disease or sickness,' which, standing alone, would place Jane's death outside of the policy's coverage." (Docket 103 at p. 78, n. 15).

The court agrees with Judge Duffy's legal analysis.  Specifically, as noted in the report and recommendation, " '[m]edical and surgical treatment mean what is done by a physician . . . in diagnosing a bodily ailment and seeking to alleviate or cure it.  It includes the things done by the patient to carry out specific directions given for these ends by a physician.' "  Id. at p. 67 (quoting Grobe, 679 F. Supp. 2d at 1031-32 (quoting Barkerding, 82 F.2d at 359)).  In this case, Jane's death was a result of "things done by [Jane (use of a fentanyl patch)] to carry out specific direction given" by her physician "in diagnosing a bodily ailment and seeking to alleviate or cure it."  Grobe, 679 F. Supp. 2d. at 1031-32.  The fact the fentanyl patch may have malfunctioned does not take Jane's death outside the medical treatment exclusion.  See Senkier v. Hartford

7

Life & Acc. Ins. Co., 948 F.2d 1050, 1054 (7th Cir. 1991) (insured's death from a catheter that migrated from its original position and punctured her heart was medical treatment, supporting insurer's denial of benefits); Whetsell v. Mutual Life Ins. Co. of N.Y., 669 F.2d 955, 957 (4th Cir. 1982) (finding claimant was not entitled to benefits for death resulting from infected IV needle, which – although an accident – "occurred as a part of medical treatment."); Handler v. Metro. Life Ins. Co., 193 F. Supp. 2d 864, 866 (D. Md. 2002) (granting summary judgment in favor of the insurer where the insured's death was caused by a catheter that perforated a section of the insured's chest cavity; declining to break with "the weight of judicial authority" holding that medical mishaps are a result of medical treatment).

The court finds the report and recommendation is an accurate development of the facts and a correct application of the law.  The court finds Judge Duffy's legal analysis is well-reasoned and plaintiff's objection is unpersuasive.  Plaintiff's objection is overruled.

**4.     The magistrate judge erroneously ruled that pre-judgment interest is a jury question.**

Judge Duffy determined "a jury question [was] created as to Mr. O'Daniel's entitlement to prejudgment interest" because "Hartford's liability on its policy for Jane O'Daniel's death was very much in question" due to a split of authority and because there was no South Dakota law on point.  (Docket 103

at p. 81).  Plaintiff objects to Judge Duffy's conclusion that pre-judgment interest is a jury question.  (Docket 109 at pp. 61-64).

Judge Duffy relied on SDCL § 21-1-11 in determining a jury question existed regarding pre-judgment interest.  (Docket 103 at pp. 80-82).  Plaintiff also relies on SDCL § 21-1-11 in arguing he is entitled to pre-judgment interest as a matter of law from January 28, 2011, to the date of judgment.  (Docket 109 at pp. 61-64).

Both Judge Duffy's and plaintiff's reliance on SDCL § 21-1-11 are in error.  SDCL § 21-1-11 does not apply to this case or any suit "commenced on or after July 1, 1990."  SDCL § 21-1-13.2.  Rather, SDCL § 21-1-13.1 applies to suits "commenced on or after July 1, 1990."  Id.  " '[T]he adoption of SDCL 21-1-13.1 in 1990 abrogated the rule that prejudgment interest cannot be obtained if damages remain uncertain until determined by a court.  Under the present rule in SDCL 21-1-13.1, prejudgment interest is allowed from the day the loss or damage occurred regardless of whether the damages are certain.' " Gettysburg Sch. Dist. 53-1 v. Helms and Assoc. 751 N.W.2d 266, 275 (S.D. 2008) (quoting City of Aberdeen v. Rich, 658 N.W.2d 775, 781 (S.D. 2003)). "Thus '[p]rejudgment interest is allowed from the date of the loss regardless of whether the damages were known with certainty.' " Gettysburg Sch. Dist. 53-1, 751 N.W.2d at 275 (quoting All Star Constr. Co., Inc. v. Koehn, 741 N.W.2d 736, 742 (S.D. 2007)). "Moreover, a '[m]ere difference of opinion as to the exact

9

amount of damages [is] not sufficient to excuse [a defendant] from compensating [a plaintiff] for loss of the use of its money.' " Gettysburg Sch. Dist. 53-1, 751 N.W.2d at 275 (quoting Honomichl v. Modlin, 477 N.W.2d 599, 601 (S.D. 1991)).

Judge Duffy found "Hartford's liability on its policy for Jane O'Daniel's death was very much in question, although the amount due under the policy if The Hartford *was* liable is certainly a firm figure which both parties could ascertain from the beginning." (Docket 103 at p. 81) (emphasis in original).

SDCL § 21-1-13.1 provides in relevant part: "Any person who is entitled to recover damages . . . is entitled to recover interest thereon from the day that the *loss or damage occurred*, except during such time as the debtor is prevented by law, or by act of the creditor, from paying the debt." SDCL § 21-1-13.1 (emphasis added). The purpose of prejudgment interest is to do " 'justice to one who has suffered a loss at the hands of another person.' " South Dakota SIF v. Homestake Mining Co., 603 N.W. 2d 527, 529 (S.D. 1999) (quoting Honomichl v. Modlin, 477 N.W.2d 599, 601 (S.D. 1991)). Prejudgment interest seeks to " 'compensate an injured party for [the] wrongful detention of money owed.' " Homestake Mining Co., 603 N.W.2d at 529 (quoting South Dakota Bldg. Auth. v. Geiger-Berger Assoc., 414 N.W.2d 15, 19 (S.D. 1987)).

The court finds Mr. O'Daniel is entitled to recover prejudgment interest. Although there is a split of authority and no South Dakota law exists which is

directly on point, the court finds plaintiff's damages were certain and ascertainable.  The fact defendants disputed liability does not change the outcome.  See Colton v. Decker, 540 N.W.2d 172, 178 (S.D. 1995) ("merely because a claim is disputed does not defeat the allowance of interest").  As a result, plaintiff is entitled to prejudgment interest "from the day that the *loss or damage occurred.*"  SDCL § 21-1-13.1 (emphasis added).  Plaintiff contends he is entitled to prejudgment interest from the date "Hartford received notice of O'Daniel's claim on January 28, 2011."  (Docket 109 at p. 61).  Defendants contend plaintiff is not entitled to prejudgment interest from January 28, 2011, the date it received notice of O'Daniel's claim, but rather "May 26, 2011, the date of the claim denial."  (Docket 114 at p. 35).

"Under South Dakota law, where the amount of plaintiff's damages is certain and the defendant refuses to pay the entire amount, prejudgment interest starts to accrue from the date of defendant's refusal."  First Dakota Nat. Bank v. St. Paul Fire & Marine Ins. Co., 2 F.3d 801, 812 (8th Cir. 1993).  In this case, plaintiff's damages were certain and defendant refused to pay the entire amount.  "Therefore, the correct date that prejudgment interest should begin to accrue . . . is the date that [Hartford] denied coverage on [Mr. O'Daniel's] claim."  Id. at 812-13.  The court finds, May 26, 2011, the date defendants denied Mr. O'Daniel's claim, is the appropriate date to begin the prejudgment interest calculation.

Under the Hartford policy, the amount ascertainable as agreed to by both plaintiff and defendants is $138,600.  (Dockets 109 at pp. 64-65; 114 at p. 27). Plaintiff is entitled to prejudgment interest of ten percent per year.  See SDCL § 21-1-13.1; SDCL § 54-3-16(2).  In accord with South Dakota law, the court finds plaintiff is entitled to prejudgment interest to the date of partial entry of judgment on August 13, 2014, of $44,614.75.  The court's calculation of prejudgment interest is explained in Exhibit A attached to this order.  Plaintiff's objection is sustained.  The report and recommendation is modified to reflect this analysis.  That part of the report and recommendation in conflict with this analysis is rejected.

**D.   DEFENDANTS' OBJECTIONS**

   **1.   The magistrate judge erred in entering summary judgment in favor of plaintiff on the breach-of-contract claim.**

Judge Duffy's report recommends granting summary judgment to plaintiff based on an ambiguity contained in the policy:

> The medical treatment exclusion can be read to exclude coverage from death caused by prescription medications as part of one's medical treatment for a sickness or disease, while the "unless" clause of the drug exclusion can be read as creating coverage.  The court notes that The Hartford was the master of the language chosen in this policy of insurance.  It alone wrote the provisions.  If The Hartford wanted to make clear that the taking of prescription medicine "as prescribed" was ***not*** a covered loss under its policy, The Hartford could have left out the "unless" clause from the prescription drug exclusion.  It is not unfair to construe the ambiguity created by the inclusion of the "unless" clause against The Hartford

12

> because the "language employed [in the policy] is that of
> [The Hartford] and it is consistent with both reason and
> justice that any fair doubt as to the meaning of its own
> words should be resolved against it.

(Docket 103 at pp. 79-80) (quoting <u>Mutual Life Ins. Co. of New York v. Hurni Packing Co.</u>, 263 U.S. 167, 174 (1923)).

Based on the ambiguity created by the insurance coverage provisions, Judge Duffy concluded Jane O'Daniel's death was a covered loss under the policy and recommended entering summary judgment on the contract claim in favor of plaintiff. <u>Id.</u> at pp. 79-80.

Defendants contend the court "should reject this conclusion because it blurs an unambiguous distinction between the key policy terms 'Injury' and 'sickness or disease,' and relies on "an exclusion to create ambiguity in a coverage provision." (Docket 110 at p 10).

Judge Duffy's report and recommendation contains a lengthy analysis of whether Jane's death was covered under the Hartford policy. (Docket 103 at pp. 56-80). As noted in the report, this court is not free to consider only a portion of the insurance policy in making its determination regarding coverage. Rather, the court must "give effect to the language of the entire contract and particular words and phrases are not interpreted in isolation." <u>In re Dissolution of Midnight Star</u>, 724 N.W.2d 334, 337 (S.D. 2006). When a contract is ambiguous, the contract is to be construed liberally in favor the

insured and against the insurer.  <u>Ass Kickin Ranch, LLC v. North Star Mut.</u>

<u>Ins. Co.</u>, 822 N.W.2d 724, 727 (S.D. 2012).

> Judge Duffy found:

>> The conclusion that Jane died as a result of fentanyl toxicity call[ed] into question two separate provisions of The Hartford's policy to determine whether her death [was] covered under the policy.  The first provision is the definition of "injury" which excludes coverage for losses resulting from medical treatment.  The second provision is the exclusion for losses due to the taking of prescription drugs.

(Docket 103 at pp. 66-67).  The defendants' argue it was error for Judge Duffy

to consider these provisions together and in finding they created an ambiguity

in the policy.

Judge Duffy found, as discussed above and agreed to by this court, that

there is no controlling South Dakota case law on this point.  In looking to cases

from other jurisdictions, Judge Duffy noted the split of authority in

jurisdictions interpreting the same or similar insurance provisions.  Judge

Duffy analyzed several cases, including <u>Clark v. Metropolitan Life Ins. Co.</u>, 369

F. Supp. 2d 770 (E.D. Va. 2005), a case involving very similar insurance

provisions.  In <u>Clark</u>, the policy provided benefits for accidental death, but

excluded coverage for any "physical or mental illness or . . . treatment for the

illness."  <u>Id.</u> at 778.  The policy also excluded coverage for "the use of any drug

or medicine, unless used on the advice of a licensed medical practitioner."  <u>Id.</u>

In analyzing these provisions, the court determined interpreting the first

exclusion for medical treatment as determinative would render the second clause of the drug exclusion - the "unless" clause - a nullity.  Id.  "If all deaths caused by treatment for illness were excluded, this would include deaths resulting from the use of medicine on the advice of a licensed medical practitioner where the medicine was prescribed to treat an illness."  Id.; see also Ramsey v. Hartford Life Ins. Co., Civ. No. 4:12-cv-00527-BLW, Docket 20, 2013 WL 1693673 (D. Idaho, 2013), vacated on stipulation of the parties, Docket No. 38 (July 31, 2013) (adopting the reasoning in Clark and finding the "medical treatment" provision with the "unless" clause from the drug exclusion created an ambiguity because the "unless" clause would be rendered a nullity by interpreting the "medical treatment" clause to preclude coverage for death from prescribed medications as part of a medical plan of treatment.).

The report and recommendation also included analysis of cases involving similar policy provisions which reached the opposite conclusion as Clark and Ramsey.  In Brown v. Stonebridge Life Ins. Co., 990 N.E.2d 895, 901 (Ill. App. Ct. 2013), the court held the "medical treatment" provision applied "on its own accord, without respect to the use of prescribed narcotics, and the drug exclusion for nonprescribed narcotics use is inapplicable."  Judge Duffy found this case distinguishable because it failed to take into account the "unless" clause contained in the prescription drug exclusion.  (Docket 103 at p. 72).

15

In Grobe, 679 F. Supp. 2d at 1031, the case primarily relied on by defendants, the court construed the identical policy provisions at issue in this case: an exclusion for losses resulting from medical treatment and an exclusion for loss resulting from drug use, with an exception to the drug use exclusion for loss resulting from taking a drug as prescribed by a physician.  In Grobe, the insured died as a result of "accidental sustained acute methadone intoxication."  Id. at 1031.  The court concluded the insured's death was the result of "medical treatment" and fell within the first exclusion.  The court then considered the interplay between the "medical treatment" provision and the prescription drug exclusion.  Id. at 1031-33.  The court concluded no inconsistency or conflict existed between the provisions.  Id. at 1031-34.

Judge Duffy disagreed with the result in Grobe.  Judge Duffy found the court in Grobe "believed that pain is not a 'sickness' or 'disease' within the meaning of the 'medical treatment' provision."  (Docket 103 at p. 73) (citing Grobe, 679 F. Supp. 2d at 1031-34).  Judge Duffy concluded "the Grobe court's analysis is faulty because it ignores the pervasive and broad definition that courts have given to the phrase 'medical treatment of a sickness or disease' under accidental death policies."  Id. at p. 74.

Based on these cases, Judge Duffy decided the policy provisions at issue in this case must be read together.  In reading the provisions together, Judge Duffy determined an ambiguity was created: "[t]he medical treatment exclusion

16

can be read to exclude coverage from death caused by prescription medications as part of one's medical treatment for a sickness or disease, while the 'unless' clause of the drug exclusion can be read as creating coverage."  Id. at p. 79. Judge Duffy concluded, based on the ambiguity, "the reading most favorable to Mr. O'Daniel must be adopted."  Id. at pp. 79-80 (citing Ass Kickin Ranch, LLC, 822 N.W.2d at 727; Pete Lien & Sons, Inc. v. First American Title Ins. Co., 478 N.W.2d 824, 827 (S.D. 1991)).

Having reviewed de novo the defendants' objections to the report and recommendation, the court adopts the magistrate judge's analysis of Clark, Brown, and Grobe.  The interpretation of the policy provision proffered by defendants would render the prescription drug exclusion "unless" clause a complete nullity.  This court agrees with the court's analysis in Clark.  In addition, for the reasons stated in the report and recommendation, the court finds Grobe is not a controlling case.  The analysis in Grobe is premised on a very narrow interpretation of "medical treatment of a sickness or disease." Courts have generally interpreted medical treatment for sickness or disease very broadly.  See Barkerding, 82 F.2d at 358-59 (medical treatment for sickness or disease includes the use of a lightbulb by the insured to impart heat to his foot); Senkier, 948 F.2d at 1051, 1053-54 (medical treatment for sickness or disease includes the use of a catheter to impart nourishment due to nutritional deficiency caused by Crohn's disease); Brown, 900 N.E.2d at

900-01 (finding chronic pain is a sickness or disease).  These broad definitions directly conflict with the court's conclusion in <u>Grobe</u> that pain from an accident is not a sickness or disease.

When a contract is ambiguous, the contract is to be construed liberally in favor the insured and against the insurer.  <u>Ass Kickin Ranch, LLC</u>, 822 N.W.2d at 727.  In this case, the policy's medical treatment exclusion and prescription drug exclusion lead to opposite outcomes.  As a result, the more favorable outcome for plaintiff must be adopted by this court.  <u>See</u> <u>id.</u>

The court finds the report and recommendation is an accurate development of the facts and a correct application of the law.  The court finds Judge Duffy's legal analysis is well-reasoned and defendants' objection is unpersuasive.  Defendants' objection is overruled.  Judgment is entered in favor of plaintiff and against defendant on count 1, the breach of contract claim.

**2.   The magistrate judge erred in concluding an issue of material fact exists regarding whether it was bad faith for defendants to deny plaintiff's claim under the Hartford policy.**

Defendants contend Judge Duffy erred in concluding there was an issue of material fact regarding plaintiff's claim defendants acted in bad faith in denying coverage under the Hartford policy.  (Docket 110 at pp. 20-28).  Defendants' assert that because there is no South Dakota law on point and a

split of authority among other jurisdictions, they cannot be held liable for bad faith.  Id.

    To prove bad faith on the part of an insurer, a plaintiff must prove: (1) that a claim was denied or benefits withheld without a reasonable basis and (2) knowledge or reckless disregard of the lack of a reasonable basis for the denial. Stene v. State Farm Mut. Aut. Ins. Co., 583 N.W.2d 399, 402 (S.D. 1998). Generally, bad faith is an issue of fact for the jury.  Isaac v. State Farm Mut. Auto. Ins. Co., 522 N.W.2d 752, 758 (S.D. 1994).  "The jury should determine the bad faith question based on the facts and law available to [the insurer] at the time [it denied] coverage."  Id.

    The South Dakota Supreme Court held there was no bad faith as a matter of law in denying a plaintiff's claim where the claim was "fairly debatable" under the law.  Mudlin v. Hills Materials Co., 742 N.W.2d 49, 51-54 (S.D. 2007).  "[A]n insurer may insist upon a judicial determination of open questions of law or fact without being penalized."  Macheca Transp. v. Philadephia Indem. Ins. Co., 649 F.3d 661, 674 (8th Cir. 2011).  However, the South Dakota Supreme Court held bad faith claims may be compensable, even when an issue of first impression is presented, if the plaintiff's claim is not "fairly debatable."  Bertelsen v. Allstate Ins. Co., 764 N.W.2d 495, 500 (S.D. 2009).  In Bertelsen, the court refused to dismiss a bad faith claim which defendants argued was an issue of first impression.  Id.  The court held that

"[a]lthough we have dismissed bad faith claims because they involved legal issues of first impression, they were dismissed because . . . the issue was fairly debatable." Id. (citing Mudlin, 742 N.W.2d at 54; Phen v. Progressive N. Ins. Co., 672 N.W.2d 52, 59 (S.D. 2003)). Unlike cases which are fairly debatable, the court noted the worker's compensation statute at issue was not fairly debatable but was "plain, unambiguous, and not susceptible to debate." Id. at 500-01; see also Isaac, 522 N.W.2d at 758 (holding a jury question existed regarding plaintiff's bad faith despite no South Dakota law on point); McElgunn v. Cuna Mut. Ins. Soc., 700 F. Supp. 2d 1141, 1151 (D.S.D. 2010) (rejecting defendant's argument that "it was error for the court not to instruct the jury that an insurer cannot act in bad faith when an issue involves matters of first impression . . . because it was contrary to South Dakota law.") (citing Bertelsen, 764 N.W.2d at 500-01).

In this case, the contract issue presented has never been interpreted by the South Dakota Supreme Court. However, based on South Dakota law, this fact alone is not sufficient to deny plaintiff's claim for bad faith. Rather, the court must look to the facts and law available to the insurer "at the time it denied coverage." Isaac, 522 N.W.2d at 758.

The report and recommendation contains an analysis of these cases and properly rejects reliance on those cases decided after defendants denied plaintiff's claim. (Docket 103 at pp. 81-83). Defendants denied Mr. O'Daniel's

20

claim for benefits on May 26, 2011, and confirmed that decision on October 12, 2011.  Id. at p. 81.  Cases decided prior to those denials are particularly relevant to this issue.

As discussed in the report and recommendation, of the relevant cases interpreting contract provisions similar to the provision contained in the Hartford policy, only Clark and Grobe were decided by October, 2011.  Both of those decisions support a conclusion that defendants were required to pay Mr. O'Daniel's claim.  See Clark, 369 F. Supp. 2d at 778 (interpreting the first exclusion for medical treatment as determinative would render the second clause of the drug exclusion - the "unless" clause - a nullity.  "If all deaths caused by treatment for illness were excluded, this would include deaths resulting from the use of medicine on the advice of a licensed medical practitioner where the medicine was prescribed to treat an illness."); Grobe, 679 F. Supp. 2d at 1033-34 (finding insured's death, which resulted from an accidental sustained acute methadone intoxication, was a result of "medical treatment" and was covered under the medical treatment exclusion).

Having reviewed and considered de novo the defendants' objections to the report and recommendation, the court adopts the magistrate judge's analysis. The court finds there is a question of material fact as to what defendants knew based on the law available to defendants at the time they denied Mr. O'Daniel's claim.  Defendants' objection is overruled.

21

**3.    The magistrate judge erred in concluding an issue of material fact exists regarding whether defendants engaged in deceit in the handling of plaintiff's claim.**

Defendants contend Judge Duffy erred in failing to grant their motion for summary judgment related to plaintiff's deceit claim.  (Docket 110 at pp. 28-33).  The court finds Judge Duffy correctly analyzed the law related to deceit claims.  (Docket 103 at p. 87).  Plaintiff sets forth three statements made by defendants which he alleges are the basis for his deceit claim:

> a.    Falsely telling O'Daniel that the policy that he purchased contained an exclusion that it did not contain;
>
> b.    Falsely telling O'Daniel that the policy exclusion that it relied on applied to the claim for Jane's death; and
>
> c.    Relying on a policy exclusion that was not in the policy, and that did not apply to the claim for Jane's death.

Docket 47 at ¶ 37.

Plaintiff also clarified in his response to the motion for summary judgment that his deceit claim rests in part on defendants' allegedly erroneous interpretation of its own insurance policy.  (Docket 72 at p. 71).

As noted in the report and recommendation, this claim is, at least in part, tied directly to plaintiff's bad faith claim for which defendants' knowledge is at issue.  As a result, the court adopts the report and recommendation and finds summary judgment is not appropriate.  Defendants' objection is overrruled.

22

**ORDER**

Based on the above analysis, it is hereby

ORDERED that plaintiff's objections (Docket 109) to the report and recommendation are overruled in part and sustained in part consistent with this order.

IT IS FURTHER ORDERED that defendants' objections (Docket 110) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 103) is adopted in part and rejected in part consistent with this order.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Docket 49) is granted on count 1, the breach of contract claim, and plaintiff is entitled to $138,600 under the Hartford policy, together with prejudgment interest of $44,614.75.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 54) is granted in part and denied in part.  Defendants' motion is granted as to plaintiff's claims of bad faith in counts 2 and 4 of the second amended complaint.  Defendants' motion is denied as it relates to the plaintiff's bad faith claim in count 3 and deceit claim in count 5 of the second amended complaint.

Dated August 13, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE

23